**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MESCO MANUFACTURING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-04875-JPH-TAB |
| | ) | |
| MOTORISTS MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

---

## VERIFIED MOTION TO SET ASIDE ENTRY OF DEFAULT

Motorists Mutual Insurance Company ("MMIC"), by counsel, pursuant to Federal Rule of Civil Procedure 55(c), respectfully moves the court to set aside the entry of default by the Clerk against MMIC.

## I.  BACKGROUND

Mesco Manufacturing, LLC ("Mesco") filed its Complaint against MMIC on December 10, 2019.  (Dkt. 1).  In brief, this action arises out of a dispute between Mesco and MMIC regarding coverage for and the value of hail damage to Mesco's property.  (Dkt. 1, ¶¶ 14-19). Mesco served MMIC's registered agent, as published by the Indiana Department of Insurance. (Dkt. 9; Dkt. 9-1; Dkt 10, ¶¶ 5-6).  Counsel for MMIC failed to timely enter an appearance and file a responsive pleading.

On January 8, 2020, Mesco filed its Application for Entry of Default pursuant to Federal Rule of Civil Procedure 55(a).  (Dkt. 10).  The Clerk filed an Entry of Default against MMIC on March 31, 2020, "for failure to plead or otherwise defend this action."  (Dkt. 11). Counsel for MMIC entered their appearances on May 12, 2020.  (Dkt. 14, 15).  MMIC filed its *Motion for*

*Time to File Response and Motion to Set Aside Entry of Default* on May 12, 2020.  (Dkt. 16).

The Court granted said motion, allowing MMIC to file this Motion to Set Aside Entry of Default

on or before June 22, 2020.[1]  (Dkt. 18).  Final judgment has not yet been entered in this case.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) states, "The court may set aside an entry of default

for good cause . . . ."  The United States Court of Appeals for the Seventh Circuit has held that a

party seeking to vacate an entry of default prior to the entry of final judgment must show: "(1)

good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the

complaint." Cracco v. Vitran Exp., Inc., 559 F.3d 625, 630–31 (7th Cir. 2009) (citations

omitted).  While courts do apply the same test for motions seeking relief from default judgment

under both FRCP 55(c) and FRCP 60(b), the test "is more liberally applied in the Rule 55(c)

context." Id. (quoting U.S. v. Di Mucci, 879 F.2d 1488, 1495 (7th Cir. 1989)).  Previous cases

within the Seventh Circuit "articulate a policy of *favoring trial on the merits* over default".  Id.

(citations omitted) (emphasis added).

## III.  ARGUMENT

The Court should use its discretion and set aside the entry of default against MMIC.  For

the following reasons, there is good cause for default, MMC took quick action to correct it, and

MMIC has a meritorious defense to the complaint.

### A.  Factual Background

On August 27, 2018, a hailstorm occurred that is alleged to have caused damage to the

roof and some associated structures at Mesco's facility located at 900 East Randall Street,

---

[1] The Court granted MMIC 30 days from the entry of its Order to file any motion to set aside entry of default. (*See* Dkt. 18.) 30 days from May 21, 2020 is Saturday, June 20, 2020, making the filing deadline Monday, June 22, 2020. *See* Fed. R. Civ. P. 6(a).

Greensburg, Indiana.  A disagreement arose between Mesco and MMIC as to the causation and extent of the damage caused by the hailstorm and the amount of the property loss alleged to have been caused by the hailstorm.  On February 21, 2019, Mesco submitted a demand for appraisal under the terms of the MMIC policy.  As per the policy, each party selected an appraiser.  Those appraisers could not agree on the amount of the loss.  An umpire was selected, and, on September 25, 2019, the umpire issued his decision.

In July 2019, MMIC retained EFI Global, an independent engineering firm to review the loss, inspect the premises and issue an independent report of its engineering examination.  The scope of the project assigned to the engineer was to "determine whether any of the roofs of the subject property were damaged by hail."

EFI Global conducted its inspection on July 18, 2019.

Based on its investigation of the loss, the results of the engineering examination and the findings of its independent appraiser, MMIC determined that the amount of loss suffered by Mesco as a result of the hailstorm was in the total amount of $273,102.96.  Checks totaling $270,602.96 were issued by MMIC to Mesco (after application of a $2,500.00 deductible) in payment of the loss.

Mesco filed the instant suit.

**B.  Good Cause for Default**

First, MMIC contends it has "good cause" for default.  The entry of default for failure of MMIC to respond to Mesco's Complaint lays entirely with its counsel.  MMIC's registered agent received a copy of the Summons and Complaint and submitted them to the claims department. An MMIC litigation specialist was assigned to the case and contacted counsel on December 23, 2019 to retain counsel to defend MMIC in the pending lawsuit.  MMIC's litigation specialist

even provided counsel with MMIC's initial evaluation of the case and requested counsel's initial evaluation as well.

However, counsel, through excusable neglect, failed to properly monitor and attend to the file and the entry of default ensued. Based on a review of events, the file was opened in counsel's office as per usual procedures but never attended to subsequently. Standard procedures are in place and staff are directed to follow these procedures to assure that new matters are properly calendared and identified for the filing of timely responses. These procedures were not followed in this instance. This led to counsel's failure to file his appearance and failure to file a responsive pleading. Further, because an appearance was never entered, counsel never received e-notice of the various filings in this case, including the *Notice of Service* (Dkt. 9), and even Mesco's *Application for Entry of Default*. (Dkt. 10). Counsel could have and would have been able to remedy the failure to file a responsive pleading earlier, and before entry of default, but-for the failure at the onset of this matter. Again, this was not a failure of MMIC itself, but of its counsel.

In Cracco, *supra*, the Seventh Circuit held in relevant part that the defendant showed "good cause", because "it did not willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence." 559 F.3d at 631. Specifically, the Cracco Court wrote, "Although [defendant] should have taken measures to ensure that service of process on its registered agent was forwarded to the appropriate employee, there is no evidence that it acted willfully when it failed to respond to [plaintiff's] complaint." Id. Likewise, in this case, MMIC did not act willfully in failing to respond. MMIC received the Summons and Complaint, assigned a litigation specialist to the claim, and referred the case to counsel. Further, even MMIC's counsel did not act willfully in failing to respond. Counsel

4

relied on standardized procedures for diarizing and calendaring functions within his office that were not observed and counsel simply was unaware of any pending issues in the case.  This certainly does not excuse the failure of counsel to be vigilant regarding matters assigned to the firm for defense.  However, as with most standardized procedures, regular application and success of those procedures breeds a level of familiarity and trust in their application that sometimes results in failures as occurred here.  Overall, the failure to respond was truly inadvertent and the product of neglect rather than intent or willful conduct.

Default was entered against MMIC as a result of the neglectful actions of its counsel, which MMIC asserts is "good cause" necessary to set aside the entry of default prior to entry of final judgment.

### C.  Quick Action to Correct Entry of Default

Second, once MMIC learned of the entry of default, it took quick action to correct the entry of default.  Importantly, MMIC itself had no independent notice of the entry of default. T he Clerk entered default against MMIC on March 31, 2020.  (*See* Dkt. 10).  The *Entry of Default* was to be distributed to MMIC via mail.  Id.  However, the letter was returned to the Clerk as "NOT DELIVERABLE AS ADDRESSED" and "UNABLE TO FORWARD".  (Dkt. 13).  Thus, MMIC never received notice of the entry of default.[2]

With the advent of the COVID-19 pandemic, counsel and his staff were relegated to remote work operations beginning March 16, 2020 which made regular and in-depth communications difficult.  In-office operations were not resumed until May 11, 2020.  At the first staff meeting on May 11, 2020, it was noted that the MMIC litigation specialist had sent an email on May 8, 2020 requesting a status report on the file.  Counsel's assistant, at the time, then

---

[2] Additionally, except for the Summons and Complaint, Mesco did not serve any subsequent pleadings on MMIC, which was allowable per F.R.C.P. 5(a)(2).

reported that her review of the file had indicated that the default entry had been made.  It was not until May 11, 2020 when counsel first learned of the default entry.

Counsel immediately notified the MMIC litigation specialist.  MMIC and counsel agreed that counsel was to immediately file his *Notice of Appearance* (Dkt. 14) and a *Motion for Time to File Response and to File Motion to Set Aside Entry of Default* (Dkt. 16).

Once MMIC and its counsel learned in May 2020 of the entry of default, they took quick action to correct the entry of default.  Thus, the Court should use its discretion to set aside the entry of default prior to entry of final judgment.

### D.  Meritorious Defense to the Complaint

Third, MMIC contends that it has meritorious defenses to the Complaint.  Such defenses include the fact that MMIC did perform its obligations in the insurance contract, as well as exercise good faith in dealing with Mesco's property damage claim.

### 1.  Breach of contract defense

MMIC asserts that it did perform its obligations in the insurance contract.  One portion of the insurance contract between Mesco and MMIC, cited by Mesco in its Complaint, reads as follows:

**LOSS CONDITIONS**
    **A.  ABANDONMENT**
There can be no abandonment of any property to us.
    **B.  APPRAISAL**
If we and you disagree on the value of the property or the amount of "loss," either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
    **1.**  Pay its chosen appraiser; and
    **2.**  Bear the other expenses of the appraisal and umpire equally.
If there is an appraisal, we will still retain our right to deny the claim.

Mesco, in fact, cited to this provision in its Complaint.  (Dkt. 1, at ¶ 21).  The critical sentence in this insurance provision, for purposes of the pending litigation, is the last sentence which reads: "If there is an appraisal, we will still retain our right to deny the claim."

The plain language of the insurance contract indicates that MMIC had the right to deny Mesco's claim, even though there was an appraisal and umpire's award.  MMIC exercised this right, in part, when it denied parts of Mesco's claim.

An identical insurance policy provision has been the subject of two decisions in this Court.  The first is <u>Philadelphia Indem. Ins. Co. v. WE Pebble Point</u>, 44 F. Supp. 3d 813, 2014 WL 4390944 (S.D. Ind. 2014) decided by Judge Sarah Evans Barker.  In a subsequent decision by Judge Tonya Walton Pratt, in which she relied heavily on the <u>Philadelphia Indem. Ins. Co.</u> decision, Judge Pratt addressed an insured's argument that the policy provision above lacked mutuality and, therefore, the result of an umpire's adverse decision was not binding on the insured.  Judge Pratt wrote:

> "[the insured's] argument misses the nuance of the appraisal provision, which binds both parties to the 'amount of loss' but does not require the insurer to pay out a claim for that amount if it has some other grounds, such as causation, to deny the claim. This Court has recognized the validity of similar appraisal provisions finding the policy in question makes clear that 'the results of an appraisal do not necessarily constitute the last word; appraisers' competence is limited to assessing the amount of loss, and not to interpreting other provisions of the policy.' P*hiladelphia Indem. Ins. Co. v. WE Pebble Point*, 44 F.Supp.3d 813, 821 (S.D. Ind. September 3, 2014). Clauses worded this way allow parties to undertake appraisal even where issues of causation remain that may ultimately result in denial of a claim for any amount. *Shifrin v. Liberty Mut. Ins.*, 991 F.Supp.2d 1022, 1038 (S.D. Ind. January 9, 2014). Similar to the appraisal provisions discussed in *Pebble Point* and *Shifrin*, the appraisal provision here binds the parties to an "amount of loss" but does not prohibit them from contesting a claim based on other provisions of the policy."

7

Villas at Winding Ridge v. State Farm Fire & Cas. Ins. Co., 2019 WL 1434220, at *7 (S.D. Ind. Mar. 29, 2019), aff'd sub nom. Villas at Winding Ridge v. State Farm Fire & Cas. Co., 942 F.3d 824, 2019 WL 5853547 (7th Cir. 2019).

In evaluating Mesco's claim, MMIC retained EFI Global, an engineering firm, to survey and evaluate the extent of the hail damage to Mesco's property.  The engineer inspected the Mesco buildings and property on July 18, 2019.  Following that inspection, the engineer issued his report in which he opined that only certain portions of the roofs at Mesco were damaged cosmetically from the hail, but other roof coverings did not exhibit hail damage.  The complete "Conclusions" section of the engineer's report is excerpted below:

## CONCLUSIONS

The analysis of available evidence related to this project supports the following conclusions:

1. Cosmetic dents from hail impacts were found in gutter downspouts and on the roof,  sections covered with sheet metal. These dents did not affect the function or integrity of these materials.
    a. This includes the sheet metal roof over the detached building on the northeast corner of the property.
2. The modified bitumen roof coverings exhibited some inadvertent man-made damage but were not damaged by hail.
3. The EPDM roof covering was not damaged by hail.

*Excerpt from EFI Global Engineering Report authored by Edwin N. Barron III, PE dated August 13, 2019, page 6.*

MMIC paid out an additional $265,296.21, but denied the remainder of the claim, taking issue with the causation, extent and nature of the damage suffered by Mesco as a result of the hailstorm.

As the portion of the policy cited above indicates, even if there is an appraisal and an umpire's award, as there was in this case, MMIC retained the right to deny the claim. This right was exercised, in part, based upon what MMIC's interpretations of what was covered under the policy, as well as the engineer's report indicating the actual extent of property damage as a result

8

of hail. Despite what Mesco contends, MMIC did not fail to perform on the Mesco-MMIC insurance contract, and in fact simply exercised one of its rights in said contract. The insurance policy does not cover loss or damage resulting from "wear and tear", "rust, corrosion, fungus, decay, deterioration," "settling, cracking, shrinking or expansion," or "mechanical breakdown." This exercise of a contractual right to dispute coverage under an insurance policy does not amount to breach of contract, and thus MMIC has a meritorious defense to this claim.

    *2. Bad faith defense*

    Further, MMIC contends it has a meritorious defense on the bad faith claim stated in the Complaint. As previously outlined, MMIC retained an engineer to survey the property damage. MMIC based its decision to issue part-payment for the claim and a partial denial of the claim on the engineer's conclusions in his report as to the extent of the hail damage.

    Regarding the nature of a bad faith claim against an insurer, the Indiana Supreme Court has held:

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

Erie Ins. Co. v. Hickman by Smith, 622 N.E.2d 515, 519 (Ind. 1993). Further, "[t]o prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability." Freidline v. Shelby Ins. Co., 774 N.E.2d 37, 40 (Ind. 2002). "Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured. In recognizing a cause of action in tort for a breach of that duty, we have also noted that a cause of action will not arise every time an insurance claim is denied. For example, a good faith dispute about whether the

9

insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith.*" Id. *(Internal citations omitted).*

As the Indiana Supreme Court later commented, "There is little question that it is difficult for the insured plaintiff to prove bad faith. It is a fact-intensive inquiry providing little certainty as to a plaintiff's probability of success." Inman v. State Farm Mut. Auto. Ins. Co., 981 N.E.2d 1202, 1207 (Ind. 2012).

Thus, in the present case, Mesco must prove, with clear and convincing evidence, that MMIC "had knowledge that there was no legitimate basis for denying liability". See Friedline, 774 N.E.2d at 40. MMIC would contend that it, in fact, has a legitimate basis for denying the Mesco's claim in part. Further, applying the factors from Erie Ins. Co., *supra*, there is no indication that Mesco will be successful on its bad faith claim. First, the retention of an engineer indicates that MMIC's partial denial of the property damage claim was not an "unfounded" refusal to pay the entire amount claimed or that the decision lacked a legitimate basis but was actually based upon a solid foundation of an expert's opinion and report. Further, any delay in payment was immediately remedied with the payment of $265,296.21 following the issuance of the engineer's report. Lastly, MMIC denies that it deceived Mesco or unduly delayed in paying the claim.  In fact, Mesco was timely paid on the claim once MMIC had completed its investigation of the loss.  Based on the facts of the case, MMIC disagreed with the conclusions drawn by Mesco's appraiser and the umpire as to the extent of claimed damage that was, in fact, caused by hail as opposed to other causes.  As long as the dispute has a rational basis, MMIC is allowed to hold its position.  Thus, MMIC has a legitimate defense to Mesco's bad faith claim, as well as the balance of Mesco's claims.

10

For these reasons, MMIC has meritorious defenses on the claims brought by Mesco. Accordingly, the Court should use its discretion to set aside the entry of default prior to entry of final judgment.

## IV.  CONCLUSION

MMIC, as the party seeking to vacate an entry of default prior to the entry of final judgment, must show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." Cracco, 559 F.3d at 630–31.  In this matter, (1) MMIC has "good cause" for the default because its counsel "inadvertently" failed to appear and file a responsive pleading, which led to entry of default; (2) MMIC took quick action to remedy the entry of default once it had notice of the entry of default; and (3) MMIC has several viable meritorious defenses in this case.  For these reasons, in support of this Circuit's policy of "favoring trial on the merits over default", id. at 631, this Court should exercise its broad discretion and set aside the Clerk's entry of default against MMIC.

WHEREFORE, MMIC prays that the Court set aside the Clerk's entry of default, grant MMIC leave to belatedly file its Answer, and for all other relief just and proper in the premises.

### VERIFICATION

I AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FORGOING STATEMENTS ARE TRUE AND ACCURATE TO THE BEST OF MY BELIEF.

Respectfully submitted:

ROCAP LAW FIRM LLC

 /s/ Richard A. Rocap
Richard A. Rocap, #6333-49
*Attorney for Motorists Mutual Insurance Company*

ROCAP LAW FIRM LLC
10293 North Meridian Street
Suite 175
Indianapolis, Indiana 46290-1130
(317) 846-0700
rar@rocap-law.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 19, 2020, a true and correct copy of the above and foregoing was filed electronically through the Court's CM/ECF system. Service of this filing will be made on all ECF-Registered counsel by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

*/s/ Richard A. Rocap*
Richard A. Rocap, #6333-49
*Attorney for Motorists Mutual Insurance Company*

ROCAP LAW FIRM LLC
10293 North Meridian Street, Suite 175
Indianapolis, IN 46290-1130
(317) 846-0700
rar@rocap-law.com