UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MESCO MANUFACTURING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04875-JPH-TAB |
| | ) | |
| MOTORISTS MUTUAL INSURANCE COMPANY Defaulted 3/31/2020, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

On December 10, 2019, Mesco Manufacturing, LLC filed a complaint against Motorists Mutual Insurance Company seeking a declaratory judgment and damages for breach of contract and bad faith. Dkt. 1. Motorists did not respond. Dkt. 11. On March 31, 2020, the Clerk of the Court issued an entry of default against Motorists. *Id.* On April 5, 2020, Mesco filed a motion for default judgment. Dkt. [12]. In response, Motorists filed a verified motion to set aside the Clerk's entry of default. Dkt. [19]. For the reasons below, Mesco's motion for default judgment, dkt. [12], is **DENIED**, and Motorists' motion to set aside the entry of default, dkt. [19], is **GRANTED**.

## I. Facts and Background

On August 25, 2018, hail damaged Mesco's property in Greensburg, Indiana. Dkt. 4 at 1. Per the insurance policy's provisions, the parties appointed a three-person appraisal panel (one from the insured, one from the insurer, and an "umpire" selected by those two together) to "determine the

amount of the covered loss." Dkt. 1 at 2–3 ¶¶ 20–26. On September 27, 2019, the insured's representative and the umpire signed an appraisal award setting the replacement cost value of the loss at $1,020,490.32 and the actual cost value at $894,733.82.[1] Dkt. 3; dkt. 4 at 1.

On November 5, 2019, Mesco submitted a Sworn Proof of Loss statement, claiming "$1,020,490.32 as covered damages from the storm loss," to Motorists. Dkt. 4 at 1. Under the policy, Motorists had "30 days to move to set aside the appraisal award" after receiving Mesco's Sworn Proof of Loss statement. Dkt. 1 at 4 ¶¶ 36–37. After that 30 days passed, however, Motorists neither moved to set aside the appraisal award nor paid the full amount. *Id.* ¶¶ 43, 45. Instead, Motorists paid only $265,296.21. Dkt. 1 at 4 ¶ 42; dkt. 20 at 4 ¶ 42.

On December 10, 2019, Mesco brought this action seeking damages and declaratory relief for breach of contract and bad faith. *See* dkt 1. Motorists did not appear, and on January 8, 2020, Mesco requested an entry of default. Dkt. 10. On March 31, 2020, the Clerk entered default against Motorists "for failure to plead or otherwise defend this action." Dkt. 11.

On April 5, 2020, Mesco filed a motion for default judgment. Dkt. 12. On May 12, 2020, Motorists appeared, dkts. 14, 15, and on June 19, 2020, filed a verified motion to set aside the entry of default. Dkt. 19.

[1] In general, Actual Cost Value ("ACV") deducts depreciation from the replacement value, while Replacement Cost Value ("RCV") does not. *See Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 646 (7th Cir. 2018).

## II.
## Analysis

### A. Mesco's Motion to Strike

Mesco moves to strike Motorists' reply brief because it "introduces new evidence[,] argument[s,] and excuses for not timely responding to this action." Dkt. 27. "New arguments and evidence may not be raised for the first time in a reply brief." *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utilities*, 410 F. Supp. 3d 943, 949 (S.D. Ind. 2019). "However, a party may expand upon and clarify arguments in its reply brief." *PSG Energy Grp. v. Jamison M. Krynski*, No. 1:18-cv-03008-TWP-TAB, 2020 WL 2059944, at *3 (S.D. Ind. Apr. 29, 2020).

Here, all arguments in Motorists' reply brief respond to points raised by Mesco's response brief. First, Motorists responds to Mesco's allegation that its motion provides only "vague references to internal procedures being ignored," dkt. 24 at 6, by submitting evidence of its counsel's noncompliance with stated procedures. Dkt. 26 at 1–4. Next, Motorists seeks to distinguish three cases that Mesco cited in its response brief. Dkt. 26 at 4–6. As a result, Motorists does not raise new arguments; it merely responds to Mesco's brief. Mesco's motion to strike Motorists' reply brief is therefore **DENIED**. Dkt. [27].

### B. Motorists' Motion to Set Aside Entry of Default

Because Motorists moved to set aside the entry of default before the Court entered final judgment, the Court evaluates Motorists' motion under Federal Rule of Civil Procedure 55(c)'s "lenient standards." *Cracco v. Vitran*

*Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009); *see Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014).

To succeed in vacating an entry of default under Rule 55(c), "the defendant must show (1) good cause for its default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 949 (7th Cir. 2020). The Seventh Circuit "has a well established policy favoring a trial on the merits over a default judgment." *Sun v. Bd. of Trustees of Univ. of IL*, 473 F.3d 799, 811 (7th Cir. 2007). As "a weapon of last resort, [default judgment is] appropriate only when a party wilfully disregards pending litigation." *Id.*

Motorists argues that the Court should "use its discretion and set aside the entry of default" because "there is good cause for default, [Motorists] took quick action to correct it, and [it] has a meritorious defense to the complaint." Dkt. 19 at 2. In response, Mesco contends that Motorists has not presented good cause or a meritorious defense. Dkt. 24 at 4–9.

**1. Good Cause**

Motorists contends that it had good cause for default because the failure to respond lies "entirely with its counsel," who did not follow established procedures in responding to the complaint. Dkt. 19 at 3–4. Mesco responds that Motorists should have followed internal monitoring processes and "should

not be permitted to avoid default by invoking the obvious and admitted failings of its own counsel to handle its case." Dkt. 24 at 1–2, 6.

Before a court can set aside an entry of default, a defendant must show "good cause" for its default. *Arwa Chiropractic*, 961 F.3d at 949. A defendant may show good cause through "mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, . . . or any other reason that justifies relief." *Id.* at 948. Good cause "does not necessarily require a good excuse for defendant's lapse." *JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 792 (7th Cir. 2015).

Here, Motorists satisfied that standard by explaining that it "failed to respond to the summons and complaint through inadvertence." *See Cracco*, 559 F.3d at 631. Motorists assigned a litigation specialist to the case and contacted counsel on December 23, 2019—a little over a week after it received service on December 14. Dkt. 19 at 3; *see* dkt. 10-1. After that, counsel opened a file and directed staff to follow the standard procedures meant to "assure that new matters are properly calendared and identified for the filing of timely responses." Dkt. 19 at 4. But "[t]hese procedures were not followed," so counsel never appeared and "never received e-notice of the various filings in this case." *Id.*

The Seventh Circuit has directed that the "common thread running through all [default] decisions" is that "judgment should depend largely on the willfulness of the defaulting party's actions." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984) at 1205. When the party "has willfully chosen not to conduct its litigation with the degree of

diligence and expediency prescribed by the trial court," the Seventh Circuit will uphold the entry of default. *Id.* Although Motorists erred by failing to answer on time, its actions arose from mere inadvertence and not from a willful disregard of the pending litigation.

Mesco points to two cases for the proposition that good cause cannot be established by blaming counsel for the delay. Dkt. 24 at 4–6 (citing *C.K.S. Engineers, Inc.*, 726 F.2d 1202; *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42 (7th Cir. 1994)). As explained above, however, *C.K.S. Engineers* explained that willfulness is the key inquiry, and willfulness is not present here. *See* 726 F.2d at 1204.

Next, Mesco argues that *Pretzel*, 28 F.3d at 45, also supports its argument. Dkt. 24 at 4, 6. There, the Seventh Circuit explained that a "lack of communication between attorney and client was not a basis for showing good cause," and held that both an attorney "and his client are responsible for the consequences" of "[m]is-calendaring a date." *Pretzel*, 28 F.3d at 45. But counsel in *Pretzel* "ignore[d] filing deadlines," *id.*, whereas here, Motorists' counsel never properly signed up to receive electronic notice of case filings in the first place. Dkt. 26 at 5.

In addition, more recent Seventh Circuit cases favor leniency. In *Cracco*, 559 F.3d at 629–31, defendant's registered agent received process, but the defendant never responded because "the documents had been forwarded to employees who did not understand their significance." The Seventh Circuit held that good cause was "not in serious contention" because the defaulting

party "did not willfully ignore the pending litigation, but, rather, failed to respond . . . through inadvertence." *Id.* at 631. So too here. Although Motorists erred when it did not respond to the complaint, its actions arose from mere inadvertence, which is enough to constitute good cause. *See Cracco*, 559 F.3d at 631.

**2. Quick Action**

Second, in order to have the entry of default set aside, Motorists must show "that it acted in a timely fashion." *Cracco*, 559 F.3d at 630–31. Mesco does not dispute the fulfillment of this requirement. *See* dkt. 24. Once Motorists learned of the entry of default, it took quick action to correct it. The Clerk entered default on March 31, 2020 and mailed notice of the entry to Motorists. Dkt. 11. However, on April 6, 2020, the U.S. Postal Service returned this notice to the Clerk as undeliverable. Dkt. 13.

On May 11, 2020, Motorists' counsel finally learned about the entry of default. Dkt. 19 at 5–6. The next day, counsel filed its notices of appearance, dkt. 14 and dkt. 15, and moved for an extension of time to file a response and motion to set aside entry of default, dkt. 16. On May 15, Motorists' counsel communicated with Mesco's counsel about its motions and notified the Court about Mesco's lack of objection that same day. Dkt. 17. As a result, Motorists has shown that it took quick action once it learned of the entry of default.

**3. Meritorious Defense**

Last, Motorists must show a meritorious defense to the complaint. *Cracco*, 559 F.3d at 630–31. A meritorious defense means "more than bare

legal conclusions, but less than a definitive showing that the defense will prevail." *Parker*, 772 F.3d at 505 (citation omitted). A "meritorious defense need not, beyond a doubt, succeed in defeating [an entry of] default, but it must at least raise a serious question regarding the propriety of a default." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012).

Motorists argues that it has meritorious defenses to both the breach of contract and bad faith claims. Dkt. 19 at 6–8. For the breach of contract claim, Motorists argues that the plain language of the insurance contract shows that it had the right to deny Mesco's claim despite the appraisal award. *Id.* at 7. The relevant contract provision states,

> B. Appraisal
>
> If we and you disagree on the value of the property or the amount of "loss," either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
> 1. Pay its chosen appraiser; and
> 2. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

Dkt. 19 at 6.

Motorists contends that it exercised its "right to deny the claim" despite the appraisal. *Id.* at 7. It claims to have taken "issue with the causation, extent and nature of the damage suffered by Mesco as a result of the hailstorm" based on its "interpretations of what was covered under the policy, as well as

the engineer's report indicating the actual extent of property damage." *Id.* at 8. Motorists also points to other contract provisions that note coverage exclusions for "wear and tear," "rust, corrosion, fungus, decay, deterioration," "settling, cracking, shrinking, or expansion," or "mechanical breakdown." *Id.* at 9. In response, Mesco contends that Motorists' arguments amount to a mere disagreement with the appraisal award, which does not qualify as a meritorious defense. Dkt. 24 at 8.

Courts applying Indiana law have previously interpreted identical right-to-deny clauses. In *Philadelphia Indem. Ins. Co. v. WE Pebble Point*, 44 F. Supp. 3d 813, 814 (S.D. Ind. 2014), an insurance policy contained an identical appraisal provision. However, in that case, the insurer refused to submit to the appraisal process at all, asserting that it "retain[ed its] right to deny the claim" without any need for appraisal. *Id.* at 815. The court rejected this contention and held that the right-to-deny provision applied only *after* the parties had gone through the appraisal process. *Id.* at 819.

Notwithstanding the different procedural posture, *Pebble* provides useful guidance on the meaning of this right-to-deny provision. "[T]he policy expressly contemplates that the insurer may deny coverage and assert defenses—including that the damage or a portion of it is outside the contractual scope of coverage—*after* an appraisal has taken place to determine the amount of loss." *Id.* (emphasis in original). This means that "the results of an appraisal do not necessarily constitute the last word; appraisers' competence is limited to assessing the amount of loss, and not to interpreting

other provisions of the policy." *Id.* at 821. Thus, an "insurer may deny the claim notwithstanding the appraisal results—presumably by interposing defenses derived from elsewhere in the contract, such as 'uncovered' causes of loss." *Id.*

Here, Motorists has pointed to other uncovered causes of loss derived from elsewhere in the contract. It contends that at least a portion of the property damage may have resulted from uncovered causes like "wear and tear," "rust, corrosion, fungus, decay, deterioration," "settling, cracking, shrinking, or expansion," or "mechanical breakdown." Dkt. 19 at 9. And Motorists provides a report from its retained engineer that may support that conclusion. *Id.* at 8. For example, the engineer contended that some of the "dents did not affect the function or integrity" of gutter downspouts or portions of the roof. *Id.* The report also indicated that certain "roof coverings exhibited some inadvertent man-made damage but were not damaged by hail." *Id.* While this order does not consider the underlying merits of these alleged contract exclusions, Motorists has presented a "meritorious defense" in the sense that some portion of the damages asserted in Mesco's claim may fall outside the scope of the appraisal decision.

Mesco argues that *Villas at Winding Ridge v. State Farm Fire & Cas. Co.*, 942 F.3d 824 (7th Cir. 2019), a case involving a contract with nearly identical language in a hail-damage claim, undermines this conclusion. *See* dkt. 24 at 8. In *Villas,* the insured contested the amount of loss set by an appraisal panel. 942 F.3d at 827. In ruling for the insurer, the Seventh Circuit rejected

the insured's contention that the appraisal provision was "ambiguous" and thus unenforceable. *Id.* The Court explained that "Indiana courts have repeatedly enforced appraisal clauses in insurance contracts[,] . . . [a]nd the resulting appraisal awards are binding absent exceptional circumstances, which means manifest injustice, fraud, collusion, misfeasance, or unfairness." *Id.* at 830. It found these principles "particularly true when the parties voluntarily submit to an appraisal under the policy." *Id.*

Mesco argues that *Villas* precludes a finding of a meritorious defense for Motorists because the appraisal award necessarily binds Motorists. Dkt. 24 at 8. But Motorists does not contend that the appraisal award fails to bind it. The award necessarily binds the parties within its scope: deciding the amount of loss. But *Villas* did not hold that an appraisal award prevents parties from raising defenses outside the amount of loss. The appraisal in *Villas* "did not decide the coverage issues;" it only considered "the value of the loss based on the disputed loss submitted . . . as required under the policy." *Villas*, 942 F.3d at 831. Because Motorists has raised coverage issues that may fall outside the appraisal award's bounds, it has raised "a serious question regarding the propriety of a default." *Wehrs*, 688 F.3d 886, 890 (7th Cir. 2012). Thus, Motorists has established a possible meritorious defense to the lawsuit.

Because Motorists raised a meritorious defense for the breach of contract claim, Motorists also necessarily raised a meritorious defense for the bad faith claim. Bad faith requires a plaintiff to show clear and convincing evidence of an insurer's knowing and "unfounded" refusal to pay or delay in paying policy

proceeds. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993). "That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *Id.* If Motorists successfully raises a breach of contract defense, then that same defense could also protect it from a bad faith claim.

## III.
## Conclusion

Motorists' motion to set aside the entry of default is **GRANTED**. Dkt. [19]. As a result, Mesco's motion for default judgment is **DENIED as moot**. Dkt. [12]. Mesco's motion to strike Motorists' reply is also **DENIED**. Dkt. [27].

**SO ORDERED.**

Date: 10/30/2020

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

William David Beyers
BUCHANAN & BRUGGENSCHMIDT PC
bbeyers@bbinlaw.com

Ryan Lee Garner
ROCAP LAW FIRM LLC
rlg@rocap-law.com

David E. Miller
SAEED & LITTLE LLP
david@sllawfirm.com

Richard A. Rocap
ROCAP LAW FIRM LLC
rar@rocap-law.com