UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MESCO MANUFACTURING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04875-JPH-MG |
| | ) | |
| MOTORISTS MUTUAL INSURANCE | ) | |
| COMPANY Defaulted 3/31/2020 ***SET | ) | |
| ASIDE PER [31] ORDER***, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

After hail damaged Mesco Manufacturing's facilities, it filed a claim with its insurer, Motorists Mutual.  Mesco alleges that Motorists breached the insurance policy and acted in bad faith when it failed to pay the full amount of its claim.  Both parties have moved for summary judgment as to breach of contract, and Motorists has moved for summary judgment on the bad faith claim.  For the reasons that follow, Mesco's motion for partial summary judgment is **GRANTED**, dkt. [61], and Motorists's motion for partial summary judgment is **DENIED**, dkt. [64].

**I.**
**Facts and Background**

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016).  For each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.*  The following facts are undisputed unless otherwise noted.

1

**A. The Policy**

Mesco Manufacturing LLC operates a manufacturing facility in Greensburg, Indiana.  Dkt. 54-3 at 1.  From September 2017 through September 2018, Motorists Mutual Insurance Company insured Mesco's business under policy number 33.299898-90E (the Policy).  Dkt. 54-3 at 2, 4–7; dkt. 62 at 9 ¶ 3.  The Policy was an "all risk" policy, which means that all damage is generally covered unless its expressly excluded under the policy.  Dkt. 61-3 at 47 (Middleton Dep. at 47:16–23).

The Policy covered damage to Mesco's commercial property that was "caused by or resulting from any Covered Cause of Loss," including hail damage.  Dkt. 54-3 at 34; dkt. 61-3 at 47 (Middleton Dep. at 47:5–7).  The Policy's appraisal provision outlined the procedure to be followed in the event the parties disputed the amount of Mesco's claimed loss:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we [Motorists] will still retain our right to deny the claim.

2

Dkt. 54-3 at 43.  The Policy also stated that Motorists would pay for covered

losses if certain preconditions were met:

> We [Motorists] will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all the terms of this coverage form and:
>
> > (1) We have reached an agreement with you on the amount of loss; or
> >
> > (2) An appraisal award has been made.

*Id.* at 44 (Loss Payment § (g)).

### B. The Insurance Claim

On August 25, 2018, hail as large as 2.75 inches fell during a storm in

Greensburg and damaged portions of Mesco's buildings' roofs.  Dkt. 54-2 at 3.

The roofing materials varied between buildings and on different sections of the

same buildings; some roofs were sheet metal, some were modified bitumen,

and some were ethylene propylene diene terpolymer (EPDM).  Dkt. 64-1 at 5–6

(Barron Report).  Mesco filed a claim for hail damage with Motorists.  Dkt. 61-

6.

Motorists initially adjusted the claim for $7,806.75.  Dkt. 61-3 at 67

(Middleton Dep. at 67:6–12).  Mesco believed that the damage from the storm

was greater, and the parties agreed to submit Mesco's claim to appraisal under

the insurance policy.  Dkt. 54 at ¶ 19; dkt. 55 at ¶ 19.  The parties' chosen

appraisers agreed that certain interior water damage should be covered.  Dkt.

61-2 at 31 (Banks Dep. at 31:1–7); dkt. 61-5 at 28 (Myers Dep. at 28:14–16,

20–23).[1]  But the appraisers could not agree on the amount of loss.  Dkt. 55 at ¶ 19.  The "only dispute" between the two appraisers was over "the pricing of the metal [roof]" and "whether there was damage to the modified bitumen or not."  Dkt. 61-2 at 23 (Banks Dep. at 31:13-16); dkt. 61-3 at 44, 53 (Middleton Dep. at 44:20–23, 53:1–9).

In March 2019, in accord with the appraisal provision, the two appraisers chose an umpire, Bart Myers, "to settle all matters of difference, if any, that shall exist between us".  Dkt. 61-1 at 1.  The umpire understood that the parties "generally agreed" as to the interior water damage, dkt. 61-5 at 28 (Myers Dep. at 28:16–19), and that the "areas of contention" were "the modified bitumen roofs and the pricing on the metal roof."  Dkt. 54-2 at 3 (Umpire Award).  His "sole focus" was "whether the roofing was damaged and needed to be replaced or not."  Dkt. 61-5 at 28 (Myers Dep. at 28:16–19).

Before the appraisal process was complete, Motorists hired Edwin Barron, an engineer and accident reconstructionist, to "determine whether any of the roofs of the subject property were damaged by hail."  Dkt. 64-1 at 4 (Barron Report); dkt. 61-3 at 35 (Middleton Dep. at 35:2–10).  In July 2019, Mr. Barron inspected Mesco's property and concluded: (1) the metal roofing and gutter downspouts were cosmetically damaged by hail; (2) "[t]he modified bitumen roof coverings exhibited some inadvertent man-made damage but were not damaged by hail"; and (3) "[t]he EPDM roof covering was not damaged by

---

[1] Motorists disputes that the parties agreed that the water damage was covered under the policy, dkt. 66 at 5 ¶¶2-3, but its designated evidence, dkts. 61-6 and 61-7, does not contradict Mesco's designated evidence.

hail." Dkt. 64-1 at 8.  Motorists told Mesco that, because of Mr. Barron's

conclusions, "the EPDM and modified bitumen roof coverings cannot be

included in the appraisal process as the disagreement is not the value of the

roof coverings; rather if the roof coverings are damaged."  Dkt. 61-6.

Umpire Myers issued his appraisal award about a month later,

concluding: (1) the modified bitumen roofs were damaged by hail and needed to

be replaced; (2) the metal roofs needed to be replaced; and (3) the EPDM roofs

and roof-mounted HVAC units were not damaged and did not need to be

replaced.  Dkt. 54-2 at 3.  Umpire Myers calculated estimates for each

damaged section of roofing for a total replacement cost value of $1,020,490.32

and an actual cash value of $894,733.82.  *Id.* at 5–15.  The award was signed

by Umpire Myers and Mesco's appraiser, Nick Banks.  *Id.* at 2.  On October 23,

2019, Motorists issued $265,296.21 to Mesco for its "covered damages that

were awarded by appraisal," noting that this did not include payment for

interior water damage or damage to the modified bitumen and EPDM roofing.

Dkt. 61-7 at 2–4.

On November 5, 2019, Mesco submitted a sworn proof of loss claiming

the entire $1,020,490.32 replacement cost value "as covered damages from the

storm loss."  Dkt. 54-2 at 1.[2]  Motorists did not issue additional payment to

Mesco in response to the Claim.  Dkt. 62 at 15 ¶ 44.

---

[2] The amount awarded by appraisal and the amount demanded in Mesco's sworn proof
of loss are the same, $1,020,490.32.  For clarity, the Court references this value as
"the Claim".

### C. Procedural History

Mesco filed this suit in December 2019, alleging breach of contract and bad faith and seeking declaratory judgment that Motorists owed the remainder of the appraisal award, plus additional damages for costs associated with completing the roofing repairs.  Dkt. 54 (Amended Complaint).[3]  The case management plan bifurcated discovery on the issues of breach of contract and bad faith.  *See* dkt. 35 at 11 ("[B]ad faith discovery is bifurcated and shall not proceed until the Court issues a ruling on the anticipated partial summary judgment motion.").  Mesco then moved for partial summary judgment on breach of contract, dkt. 61, and Motorists moved for summary judgment on breach of contract and bad faith, dkt. 64.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this

---

[3] After Motorists was initially defaulted for failing to appear, the Court granted its motion to set aside the clerk's entry of default, finding there was (1) good cause for its default; (2) quick action to correct it; and (3) a meritorious defense to Mesco's complaint.  Dkt. 31 at 4–12 (citing *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 949 (7th Cir. 2020)).

burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on cross motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party." *Williams*, 832 F.3d at 648. Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019). Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mutual Insurance Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### III.
### Analysis

#### A. Breach of Contract

Both parties have moved for summary judgment on Mesco's breach of contract claim. "To recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). Mesco argues that Motorists breached the Policy by failing to pay the Claim for hail damage. Dkt. 62 at 20. Motorists argues that, because it disputes the amount of damage that was caused by hail, the appraisal provision gives it the right to deny the Claim despite the award that resulted from the appraisal process. Dkt. 65 at 5.

**1. Meaning of the appraisal provision**

The appraisal provision states:

> If we and you disagree on the value of the property or
> the amount of loss, either may make written demand
> for an appraisal of the loss. . . . The appraisers will state
> separately the value of the property and amount of loss.
> If they fail to agree, they will submit their differences to
> the umpire. A decision agreed to by any two will be
> binding. . . .
>
> If there is an appraisal, we [Motorists] will still retain
> our right to deny the claim.

Dkt. 54-3 at 43.  Mesco argues that "amount of loss" necessarily includes a decision about cause of the "loss."  Dkt. 62 at 16–22; dkt. 69 at 19–22. Therefore, because the appraisal's decision about the "amount of loss" is "binding", the final sentence of the provision does not allow Motorists to deny the claim over "causation" disputes.  Dkt. 62 at 16–22; dkt. 69 at 19–22. Motorists maintains that if it disagrees with the appraisal's causation determination, the final sentence of the provision gives it the right to deny all or a portion of Mesco's claim, regardless of whether an appraisal award has been made.  Dkt. 65 at 6.

The controlling principles of Indiana contract interpretation are straightforward.  "Under Indiana law, courts give unambiguous contract terms their plain meaning."  *Villas at Winding Ridge v. State Farm Fire and Casualty Co.*, 942 F.3d 824, 830 (7th Cir. 2019).  "[C]ontract terms may be ambiguous if they are susceptible to more than one reasonable interpretation."  *Brockmann v. Brockmann*, 938 N.E.2d 831, 835 (Ind. Ct. App. 2010).  "[W]hen construing the language of an insurance policy, a court should construe the language of

an insurance policy so as not to render any words, phrases or terms ineffective or meaningless." *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016) (quotation omitted).

Here, Motorists reads the appraisal provision to mean that it has the unrestricted right to deny the Claim because it disagreed with the umpire's decision about the extent of hail damage to Mesco's property. Dkt. 70 at 12; dkt. 54-3 at 43 ("If there is an appraisal, we [Motorists] will still retain our right to deny the claim."). Mesco argues that Motorists's reading would render the appraisal provision, and the process it creates, meaningless. Dkt. 69 at 21–22.

In *Villas*, the Seventh Circuit considered a substantively identical appraisal provision whereby each party selects an appraiser and the appraisers in turn select an umpire. 942 F.3d at 828. Exactly like here, that appraisal provision stated that a "decision agreed to by any two will be binding", yet also said "[i]f there is an appraisal, [the insurer] will still retain [their] right to deny the claim." *Id.* On appeal, the insured argued that the "award is not binding because [the umpire] mistakenly determined the scope of the loss." *Id.* at 831. But the Seventh Circuit rejected that argument, finding the umpire had properly resolved the "dispute the parties presented to him: namely, the amount of hail damage to the roofing shingles." *Id.* at 830–31. The Court found "that the policy's appraisal provision is unambiguous." *Id.* at 830. The award was signed by the umpire and the insurer's appraiser, and so, under the plain terms of the appraisal provision, "the award became binding." *Id.* at 831.

Because the insured had "not identified any exceptional circumstances" to set aside the award, the Court declined to do so on appeal. *Id.* at 831.

Motorists argues that *Villas* is not controlling because it did not specifically address the "right to deny" clause of the appraisal provision. Dkt. 70 at 12. But in *Villas*, the Seventh Circuit rejected the insured's position, finding the policy's appraisal provision as a whole—not just selected phrases or lines within the provision—binding and unambiguous. 942 F.3d at 830–31. Even if *Villas* does not control, the Court rejects Motorists's reading of the "right to deny" clause. Indiana law is clear that courts must not construe contract terms "so as to render any words, phrases or terms ineffective or meaningless." *Jakubowicz*, 56 N.E.3d at 619. As other courts have noted, Motorists's reading would do just that.

For example, in *BonBeck Parker, LLC v. Travelers Indem. Co. of America*, 14 F.4th 1169 (10th Cir. 2021), Travelers argued that damage was not from a "hailstorm but from uncovered events like wear and tear," so the last sentence of the appraisal provision allowed it to deny coverage "on any ground available under the Policy" including "its view that something other than the hailstorm caused the damage." *Id.* at 1173, 1179. The Tenth Circuit disagreed, finding that read in context of the appraisal provision and the entire policy, the "right to deny" clause reiterates Travelers' right to deny the claim for reasons that have "nothing to do with the cause of the damage" like failure to "provide 'prompt notice of the loss or damage.'" *Id.* at 1180. The Tenth Circuit concluded that this interpretation of the appraisal provision gave "effect both to

10

the plain meaning of the phrase 'amount of loss' in the first sentence and Travelers' retained defenses in the last sentence." *Id.*

So too here. By reading the "right to deny" as reiterating Motorists's right to deny the claim for reasons outside the appraisal provision—that is, reasons separate from the determination of the "amount of loss" or the cause of that loss—the Court gives meaning both to the binding nature of the appraisal award and to Motorists's right to consider Mesco's compliance with the other terms of the insurance policy. *See Jakubowicz*, 56 N.E.3d at 619. Importantly, this reading also avoids rendering the appraisal process meaningless in any case where the insurer, like Motorists here, disputes the appraisal's outcome. *Crescent Plaza Hotel Owner, L.P. v. Zurich American Ins. Co.*, 20 F.4th 303, 311 (7th Cir. 2021) ("Some redundancy in insurance contracts is normal, while construing an endorsement to be completely superfluous is not.") (citation omitted). Moreover, this conclusion aligns with the Seventh Circuit's observation "that insurance policies often use overlapping provisions to provide greater certainty on the scope of coverages and exclusions." *Id.* at 311 (noting that insurers often take such a "belt and suspenders" approach in insurance contracts.).

Therefore, the "right to deny" clause may be triggered for reasons that come from elsewhere in the policy, as in *Employers Mutual Casualty Co. v. Skoutaris*, where the insurer refused to pay a binding appraisal award because the insured breached his duty to submit to an examination. 453 F.3d 915, 925 (7th Cir. 2006). Or it may be triggered by an allegation of some other

11

"exceptional circumstance." *Villas*, 942 F.3d at 831.  But the provision cannot reasonably be read to give Motorists the unfettered right to disregard an appraisal award because it disagrees with the outcome of the appraisal process.

### 2. Motorists breached the Policy by refusing to pay the Claim

The Court next considers whether Motorists breached the Policy by failing to pay the Claim.  Under § (g) of the Policy's "Loss Payment" provision, Motorists agreed that:

> We [Motorists] will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all the terms of this coverage form and:
>
>> (1) We have reached an agreement with you on the amount of loss; or
>>
>> (2) An appraisal award has been made.

Dkt. 54-3 at 44 (Loss Payment § (g)).  Mesco argues that because the award is binding, Motorists breached its "primary obligation" under the Policy by failing to pay the full amount of the Claim—as was demanded in the proof of loss—within the 30-day period.  Dkt. 62 at 20.

Indiana courts have "repeatedly enforced appraisal clauses in insurance contracts." *Villas*, 942 F.3d at 830.  "And the resulting appraisal awards are binding absent exceptional circumstances, which means manifest injustice, fraud, collusion, misfeasance, or unfairness." *Id.*  Here, like in *Villas* and *BonBeck*, the parties disputed the extent of hail damage—Mesco maintained that its modified bitumen roofs were hail damaged; Motorists believed that the

roofs were damaged by other causes.  Dkt. 61-2 at 23 (Banks Dep. at 31:13–16); *see* dkt. 61-3 at 44, 53 (Middleton Dep. at 44:20–23, 53:1–9).  The umpire recognized this disagreement, writing that the "areas of contention based on my review of both positions are the modified bitumen roofs, and the pricing on the metal roofing."  Dkt. 54-2 at 3.  And the umpire resolved that dispute, concluding that "the modified roofs are hail damaged."  *Id.*  He assigned this loss a dollar value and he and Mesco's appraiser signed the award.  *Id.* at 2, 5–15.  So, as in *Villas*, at that point—under the unambiguous appraisal provision—"the award became binding."  942 F.3d at 831.[4]

Moreover, it's undisputed that the umpire issued the binding appraisal award on September 27, 2019, dkt. 54-2 at 3; that Motorists issued payment for the portion of the damage it believed was caused by hail on October 23, 2019, dkt. 61-7 at 2–4; that Mesco submitted a sworn proof of loss for the full amount of the appraisal award on November 5, 2019, dkt. 54-2 at 1; and, that Motorists has neither paid nor denied the sworn proof of loss, dkt. 62 at 15 ¶ 44.

Motorists argues that it was within its rights under the Policy to pay the appraisal award on losses for which there is no dispute as to causation while denying payment with respect to losses for which causation is contested.  But, as decided above, the appraisal provision does not give Motorists the right to

---

[4] To the extent that Motorists cites cases from this district that have found that causation is an issue preserved for the Court to determine after appraisal, dkt. 70 at 8–9, those cases predate *Villas* where the Seventh Circuit upheld the umpire's award, and "scope of loss" decision, as binding.

13

the deny the claim based on its disagreement with the appraisal's conclusion as to causation. *Supra* at 8–11.

The Policy required Motorists to pay for covered damages "within 30 days after we receive the sworn proof of loss, if you have complied with all the terms of this coverage form and . . . an appraisal award has been made." Dkt. 54-3 at 44 (Loss Payment § (g)). Motorists makes no argument that Mesco failed to comply with any term of the Policy and has not identified exceptional circumstances for setting the award aside. *Villas*, 942 F.3d at 830. Therefore, Motorists breached the insurance policy when it refused to pay the Claim amount decided in the binding appraisal award. *Id.* at 831.

*    *    *

In short, Mesco has demonstrated that it is entitled to summary judgment on its breach of contract claim. Therefore, Mesco's motion for partial summary judgment on breach of contract is **GRANTED.**[5] Motorists's motion for partial summary judgment on breach of contract is **DENIED.**

### B. Bad Faith

The case management plan ordered that "bad faith discovery is bifurcated and shall not proceed until the Court issues a ruling on the anticipated partial summary judgement motion." Dkt. 35 at 11. Regardless, Motorists argues that it's entitled to summary judgment on that claim because no additional discovery is needed to conclude that, as a matter of law, "it had a

---

[5] The Court does not reach Mesco's arguments that Motorists waived its right to contest the award, *id.* at 22–27.

legitimate basis for denying Mesco's claim in part." Dkt. 65 at 10. Mesco responds that the motion should be stricken due to Motorists's disregard for the case management plan. Dkt. 69 at 27–32.

Motorists' argument is premised on its belief that it was entitled to summary judgment on breach, *see* dkt. 65 at 10, but as this order explains, Mesco is entitled to summary judgment on that issue. Moreover, the parties' legal and factual arguments on bad faith are underdeveloped. This is likely due to Motorists' motion for summary judgment on the bad-faith claim being premature as discovery and briefing on the issue was bifurcated by court order. For these reasons, Motorists's motion for partial summary judgment on the bad faith claim is **denied without prejudice as premature**.

## IV.
## Conclusion

Mesco's motion for partial summary judgment is **GRANTED**, dkt. [61], and Motorists' motion for partial summary judgment is **DENIED**, dkt. [64].

The Magistrate Judge is asked to set this matter for a status conference to discuss the remaining claims, settlement, and trial readiness.

**SO ORDERED.**

Date: 1/25/2023

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

15